IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  11-cv-2597-LTB

PEGGY SPENCE O/B/O DARROW A. HARTNESS, JR., DECEASED,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

_____

ORDER
_____

Plaintiff Peggy Spence, on behalf of her deceased son, Darrow A. Hartness, Jr., appeals from the Social Security Administration ("SSA") Commissioner's (the "Commissioner") final decision denying her son's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), filed pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c.  Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral argument will not materially aid in resolving this appeal. After considering the parties' arguments and the administrative record, for the reasons below, I AFFIRM the Commissioner's final order.

## I.  STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his February 16, 2006, application for DIB and SSI, alleging an inability to work beginning on October 1, 2006, due to disability. [Administrative Record ("AR") 270-80, 95-96] (Plaintiff's original alleged onset date was January 23, 2003, but he later amended it to the October date.) After his application was denied, Plaintiff requested a hearing before an administrative law judge (the "ALJ"), and a hearing was

conducted on May 7, 2009. [AR 37-68] On August 26, 2009, the ALJ issued a decision finding Plaintiff not disabled. [AR 100-09] The SSA Appeals Council (the "Appeals Council") vacated that decision and remanded the case to the ALJ with instructions to further assess Plaintiff's alleged mental impairments. [AR 114-17]

On April 8, 2010, Plaintiff sustained a head injury and significant spinal injuries in an automobile accident, and he died a short time later. [AR 552-644] Plaintiff's mother pursued this case after his death. [AR 266]

On July 26, 2010, the ALJ held a hearing to elicit a psychologist's expert testimony. [AR 69-94] Then, in an August 18, 2010, decision, the ALJ found that, before his death, Plaintiff was not disabled during the relevant time period because he was capable of performing past relevant work. [AR 11-22] The Appeals Council denied Plaintiff's request for review, [AR 1-4] making the Commissioner's denial final for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial review.  This appeal followed.

## II. FACTS

Plaintiff was born on March 29, 1962, and was 44 on his alleged onset date. [AR 270] He had a high school education and worked as an auto rental clerk, auto detailer, advertising sales representative, chauffeur, and telemarketer in the 15 years prior to his alleged onset date.

[AR 41, 65, 327, 356, 365] He was involved in prescription drug fraud and drug abuse for at least 20 years but has denied drug abuse after 2000. [AR 452]

Plaintiff sustained a head injury in a 1987 car accident and alleges that this led to him having frequent seizures, epilepsy, and auditory hallucinations. [AR 421, 523, 543] His doctors stated that his seizures were well-controlled when he took his prescription medication. [*E.g.*, AR 402, 432]

Plaintiff had only two objectively documented seizures since 2005: one in July 2007 and one in March 2008. [AR 433, 508] He also had asthma, which was controlled with an albuterol inhaler, and he rarely complained of breathing problems. [AR 421, 480, 536-37]

Between December 2005 and March 2006, Plaintiff had repeated episodes of stomach bleeding and vomiting, the cause of which was unknown. [AR 401-19] In a February 2006 hospitalization for vomiting, Plaintiff was irrational and paranoid, and the attending physician suspected either drug abuse, drug withdrawal, or a personality disorder as the cause. [AR 415] There is no evidence of any treatment for Plaintiff's February 2006 episode or of any similar episodes before or after February 2006. Plaintiff filed his application for SSI and DIB later that month.

In June 2006, Claudia Elsner, M.D., examined Plaintiff at the request of the state disability agency. [AR 421] Plaintiff complained of peptic ulcer disease, seizure disorder, depression, and asthma. [AR 421] Based on her exam, Dr. Elsner concluded the following: Plaintiff had a normal physical exam and could perform any work that a man his age and physique was able to perform. [AR 423] His seizure disorder appeared stable. [AR 423] He independently cared for himself and completed typical daily life tasks. [AR 421] Her biggest concern was Plaintiff's high heart rate, and she diagnosed him with tachycardia. [AR 423-24] She concluded, however, that Plaintiff was "likely healthy once his 'nerves' and his tachycardia are addressed sufficiently." [AR 424] Plaintiff would later report that his tachycardia was controlled with hypertension medication. [AR 480]

Later that month, Michael Weaver, M.D., a state agency physician, completed a physical residual functional capacity ("RFC") assessment of Plaintiff based on a review of the administrative record. [AR 376-82] Dr. Weaver concluded that Plaintiff's asthma and seizure disorder limited him to medium work with some climbing and environmental limitations. [AR 376-80] He further stated

that none of Plaintiff's impairments would be considered severe under the Act. [AR 377]

Also in June 2006, James Dyde, M.D., a state agency psychiatrist, reviewed the administrative record and completed a psychiatric review of Plaintiff. [AR 383-96] He diagnosed Plaintiff with paranoia, anxiety, mild paranoid personality disorder, and drug abuse, [AR385, 388, 390, 391] but opined that none of these were severe impairments. [AR 383, 393] This was because he concluded that they imposed no functional limitations on Plaintiff's activities of daily living and imposed only mild restrictions on his abilities to maintain social functioning, concentration, persistence, and pace. [AR 393] Dr. Dyde further found no episodes of decompensation. [AR 393]

Moving to November 2007, at that time Plaintiff was incarcerated for prescription drug fraud. [*See, e.g.*, 452, 461]   While in prison, Plaintiff met with Darren Lish, M.D., and Paula Archuleta, the prison's psychiatrist and licensed professional counselor, respectively. [*See*, *e.g.*, AR 444-46, 452-53] Plaintiff told Dr. Lish that he heard voices, but that they were "not really specific, more annoying than anything," and that they did not command him to do anything. [AR 459] Dr. Lish opined that there was "[n]o evidence of thought disorder suggestive of schizophrenia." [AR 460] He further opined that Plaintiff's prescription medications provided "good effect[s]" and that with them Plaintiff was relatively stable. [AR 452, 460] Based on Plaintiff's self-reporting and Dr. Lish's own observations, Dr. Lish indicated that the vast majority of symptoms of psychological illness were "not present." [AR 453] Somatic concerns were "very mild," and hallucinations were "mild." [AR 453] Ms. Archuleta indicated that Plaintiff had more "very mild" and "mild" symptoms, but nothing more severe. [AR 445]

In March 2008, Plaintiff moved from prison to a halfway house. There he attended daily group and individual therapy for two weeks. [AR 480, 504-15] James Newcomb, the licensed

professional counselor who met with Plaintiff, routinely stated that Plaintiff's mental status was "within normal limits," yet he still assigned Plaintiff a global assessment of functioning scores ("GAF") between 40 and 60. [AR 504-15] On March 24, 2008, Plaintiff requested an emergency individual session with Mr. Newcomb. [AR 509] He told Mr. Newcomb that he was "going to have a seizure," and he "quickly laid down on the floor and said he was having a seizure and needed his meds." [AR 508] Mr. Newcomb briefly left the room to seek assistance, and when he returned, Plaintiff was "unresponsive." [AR 508] Plaintiff returned to the half-way house the next day and continued therapy. [AR 509-15] Four days after this alleged seizure, Plaintiff went to Wheat Ridge Internal Medicine ("Wheat Ridge") to refill his medications. [AR 534] He claimed that he had had four seizures over the past four days. [AR 534] The record indicates that during those four days he was at the halfway house participating in therapy and was not in distress. [AR 509-15]

Next, in April 2008, Plaintiff returned to prison from the halfway house for unspecified reasons. [AR 480] During this second prison stint, Plaintiff repeatedly reported seizures to prison medical staff, but, with one exception, these were unwitnessed and undocumented. [AR 442-87] Additionally, his physical and psychological examinations were routinely normal and did not show evidence of seizures or any other significant condition. [AR 442, 454, 463-65, 472-80, 496] In her session notes from July 10, 2008, Ms. Archuleta stated that Plaintiff's thoughts were "realistic, clear and cohesive," that there was "[n]o indication of psychosis or confusion," and that the voices Plaintiff purported hearing "appear[ed] to be his own thoughts as opposed to [auditory hallucinations]." [AR 465]

Plaintiff was released from prison in September 2008 and saw Stanton Elzi, M.D., for a follow-up evaluation on the 29th of that month. [AR 532-33] Dr. Elzi's records from that evaluation

show Plaintiff's psychological and physical condition to be normal with the exception of his tachycardia. [AR 532-33] That notwithstanding, that same day Dr. Elzi completed a welfare form stating that Plaintiff would be disabled for 12 or more months. [AR 539-40]

In May 2009, Plaintiff saw Shannon Poletti, M.D., to request medication. [AR 521] Upon seeing Plaintiff, Dr. Poletti noted that he was very neatly dressed, polite, and cooperative. [AR 521] She further noted that he was mentally organized and "appeared to process information remarkably well if he has traditional auditory hallucinations." [AR 523] In her notes from a June 2009 psychiatric evaluation, Dr. Poletti stated that Plaintiff's story had "several inconsistencies" and that he "seem[ed] very manipulative." [AR 524]

Lastly, in July 2009, Frederick Leidal, Psy.D, examined Plaintiff at the state agency's request. [AR 542] Dr. Leidal's report conveys that Plaintiff independently completed the activities of daily living and that his affect, mood, cognitive ability, and functional adaptive skills were normal.  [AR 544-46] Dr. Leidal also noted in the report that Plaintiff "did not display any overt signs of anxiety." [AR 544] From his examination, Dr. Leidal concluded that Plaintiff "marginally m[et] the criteria for Schizophrenia," but he "d[id] not appear to have either paranoid or grandiose delusions." [AR 546]  With respect to limitations on Plaintiff's work-related mental abilities, Dr. Leidal opined that Plaintiff's restrictions ranged from none to marked depending on the ability, with the vast majority of abilities having no or mild limitations to moderate limitations. [AR 546-47] Specifically, as pertinent here, Dr. Leidal opined that Plaintiff's mental ability to relate to others in an appropriate manner, to accept instruction or criticism and respond appropriately, and to adapt, were moderately impaired. [AR 546] He further opined that Plaintiff's ability to work near others and remain focused was moderately to markedly impaired. [AR 546]

### III. LAW

To qualify for DIB under section 216(i) and 223 of the Act, an individual must meet the insured status requirements of these sections, be under age 65, file and application for DIB for a period of disability, and be "disabled" as defined by the Act.   42 U.S.C. §§ 416(i), 423. An individual's eligibility for SSI payments for each month shall be determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1).   In addition to being financial eligible, the individual must file an application for SSI and be considered "disabled" as defined by the Act. 42 U.S.C. § 1382.   Thus, being "disabled" under the Act is a requirement to receive DIB and SSI.

A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.   If he is, disability benefits are denied.   *See* 20 C.F.R. § 416.920.   Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 416.920(c).   If the claimant is unable to show that his medical impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.   Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.   *See* 20 C.F.R. § 416.920(d).   If the impairment is not listed, he is not presumed to be conclusively disabled.

Before moving to Step Four, the ALJ must determine the claimant's RFC, which is the claimant's ability to do physical and mental work activities on a sustained basis despite impairments. *See* 20 C.F.R. § 404.1520(f), 416.920(f).  Step Four then requires the claimant to show that his impairment(s) and assessed RFC prevent him from performing work that he has performed in the past.  If the claimant is able to perform his previous work, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(e) & (f).  Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education, and work experience.  *See* 20 C.F.R. § 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff met the insured status requirements of the Act through December 31, 2009.  [AR 14] Plaintiff therefore must establish disability on or before that date to be entitled to a period of disability and DIB.  [AR 12]

Moving to the five-step evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2006, the alleged onset date (Step One).  [AR 14] The ALJ next determined that Plaintiff had the following sever impairments: seizure disorder, history of gastrointestinal bleeding, hepatitis C, asthma, and HIV (Step 2).  [AR 14]  The ALJ determined, however, that these impairments did not meet or medically equal a listed impairment (Step Three). [AR 14] The ALJ assessed Plaintiff with the following RFC:

> [Plaintiff can] perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) involving lifting/carrying up to 50 pounds occasionally and 25 pounds frequently; standing and walking for 6 hours in an 8-hour workday; and sitting for 6 hours in an 8-hour workday. The claimant can never climb ladders/ropes/scaffolds, but can otherwise climb occasionally. He should avoid concentrated exposure o fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants. The

claimant must avoid hazards in the work place such as unprotected heights, moving machinery, or operating motor vehicles.

[AR 18] The ALJ then found that with this RFC, prior to his death, Plaintiff was capable of performing past relevant work as an auto rental clerk, sales representative, and telemarketer (Step 4). [AR 21, 14] On this basis the ALJ concluded that Plaintiff was not disabled between his alleged onset date and the date of his death.  Consequently, the ALJ did not proceed to Step Five.

## V. STANDARD OF REVIEW

My review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  Thus, the function of my review is "to determine whether the findings of fact  . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed."  *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  I may not re-weigh the evidence or substitute my judgment for the ALJ's judgment.  *See Casias v. Secretary of Health & Human Servs.,*933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987).  With regard to the application of the law, reversal may be appropriate when the Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

Plaintiff nominally raises three issues on appeal.  *See* Pl.'s Br. at 3. The first is that the ALJ erred by failing to consider his substance abuse.  *Id.* The second is that the ALJ erred by improperly evaluating his credibility. *Id.* The third is that the ALJ erred by basing the weight he accorded a testifying medical expert's opinion upon that expert's credentials. *Id.*  I say Plaintiff "nominally" raises three issues because although difficult to discern, it seems that he attempts to raise a number of others as well. This difficulty derives from the fact that Plaintiff's brief is disquietingly disorganized and sloppy. In places it is even incoherent. It is rife with formatting, grammatical, punctuation, citation, and typographical errors. There are myriad incomplete sentences.  This makes identifying the exact nature and quantity of his issues on appeal problematic, which, in turn, makes addressing them toilsome. Moreover, these problems are compounded by the fact that certain quotations and characterizations of the ALJ's decision and applicable law by Plaintiff are so lacking in accuracy that they evince at best carelessness and at worst an intent to mislead the Court. Nevertheless, I will address those issues I can discern and that have been properly raised.

### A.
### Plaintiff's Drug Addiction

Plaintiff argues that the ALJ erred by not applying the "drug addiction and alcohol abuse" analysis ("DAA analysis") under 42 U.S.C. §423(d)(2)(c) in determining whether he was disabled. He contends that an ALJ is obligated to utilize the DAA analysis whenever a claimant has a substance abuse diagnosis.  As he was so diagnosed, Plaintiff submits that the ALJ erred by not engaging in the DAA analysis. Plaintiff is incorrect.

Special statutes and regulations govern SSI and DIB cases involving drug addiction or alcoholism. *See, e.g.*, *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006).  Section 423(d)(2)(c)

10

of the Act provides that an "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(c). Under 20 C.F.R. § 416.935(b)(1), "the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol." *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). "Under th[is] regulation, the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether any or all of plaintiff's remaining limitations would be disabling." *Id.* This is the DAA analysis.

The ALJ did not conduct a DAA analysis in the instant case, but contrary to Plaintiff's assertion, he need not have done so. The Tenth Circuit has clearly held that an ALJ needs to engage in a DAA analysis only if and only after finding that the claimant is disabled. *See Drapeau*, 255 F.3d at 1214 ("The ALJ's analysis of plaintiff's alcohol abuse was flawed in several respects. First, the ALJ failed to determine whether plaintiff was disabled prior to finding that alcoholism was a contributing factor material thereto."). This is because "[t]he implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(c)." *Id.* (citing 20 C.F.R. § 416.935(a)); *see* 20 C.F.R. § 416.935(a) ("*If we find that you are disabled and have medical evidence of your drug addiction or alcoholism*, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, . . .") (emphasis added).  As a corollary, "[t]he ALJ cannot begin to apply §423(d)(2)(c) properly when . . . he has not yet made a finding of disability." *Id.* This is equally true in cases involving mental

impairments and drug addiction and alcoholism. *See, e.g.*, *Salazar*, 468 F.3d at 622-24.

Here, the ALJ did not find that Plaintiff was disabled. The ALJ was thus was not obligated to engage in the DAA analysis.  *See Drapeau*, 255 F.3d at 1214-15; *see also*  20 C.F.R. § 416.935(a). Accordingly, I conclude that the ALJ did not err by not doing so.

## B.
### ALJ's Determination of Severe Impairments

Plaintiff also argues that, in multiple ways, the ALJ erred in assessing his severe impairments at Step Two.  I disagree.

Plaintiff alleged chronic depression and auditory hallucination with suggestion of psychotic and personality disorders. [AR 14] At the first hearing, he testified to hearing voices and having problems being around others. [AR 14] He also indicated that medications were of some help but that he continued to experience poor sleep, auditory hallucinations, and depression. [AR 14] "After careful consideration of the entire record," and based upon the exam findings and the weight of the medical evidence of record, the ALJ concluded that Plaintiff's mental impairments were "non-severe." [AR 15, 17] The ALJ ultimately determined that Plaintiff's sever impairments were seizure disorder, history of gastrointestinal bleeding, hepatitis C, asthma, and HIV.  [AR 14]

Plaintiff first contends that the ALJ erred by "not mention[ing] [his] Schizophrenia and Substance Abuse addiction." Pl.'s Br. at 29. This is simply false. The ALJ's discussion of Plaintiff's impairments at Step Two patently included schizophrenia and drug abuse. [*See generally*, AR 14-16, 15 ("Although a consultative examiner felt the claimant had schizophrenia and a personality disorder, the exam findings, along with the weight of the medical evidence of record, shows that these conditions would not significantly affect the claimant's ability to do work related activities and are 'non-severe.' "), 14-15 ("According to the claimant, he has not used drugs or alcohol since his

release from prison. Medical evidence shows that claimant has a history of opiate addiction . . . . While there is no evidence of ongoing drug use since the claimant was released from prison, there is indication of drug-seeking behavior by the claimant. . . .").

Plaintiff also contends that the ALJ erred by not including his "diagnosis of schizophrenia with auditory hallucinations and personality disorders . . . as limiting documented diagnosis." *Id.* at 11. This argument is equally defective.  In the first instance, Plaintiff does not define "limiting documented diagnoses," provide any cite explaining the term, or provide authority setting forth the ALJ's responsibility with respect thereto. I thus have no basis upon which to evaluate this argument. Nevertheless, assuming for Plaintiff's sake that what he means is that the ALJ erred by not including those impairments as "severe impairments," his argument still fails.  The ALJ devoted a full two pages explaining his conclusion that Plaintiff's mental impairments were "non-severe," citing specific evidence of record in doing so. [*See* AR 15-17] Indeed, the ALJ's discussion of this conclusion is so thorough, detailed, and lengthy that I decline to recapitulate it here and instead incorporate it by reference. [*See* AR 15-17]  After reviewing this portion of the ALJ's decision and the cited evidence, I conclude that the ALJ's determination that Plaintiff's alleged mental impairments were "non-severe" is supported by "more than scintilla" of evidence that a reasonable mind would accept support thereof.  The determination is thus based upon substantial evidence. *Campbell*, 822 F.2d at 1521. What Plaintiff is asking me to do is to reweigh this evidence. I cannot. *See, e.g.*, *Casias,* 933 F.2d at 800.

Plaintiff's argument fails for another reason. "At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' "

*Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1523). The Tenth Circuit has held that any error at Step Two is "harmless" so long as "the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). Harmless errors do not warrant remand. *Shineski v. Sanders*, 556 U.S. 396, 407-09 (2009) (citing and quoting 28 U.S.C. § 2111). Here, the ALJ concluded that Plaintiff had severe impairments, and, consequently, that he could not be denied benefits at Step Two. [AR 14-19] The ALJ then proceeded to Steps Three and Four of the sequential evaluation. [*See* AR 14-21]. Thus, even if the ALJ erred by finding that Plaintiff's mental impairments were not severe, it was harmless and therefore would not mandate remand. *Carpenter*, 537 F.3d at 1266; *Shineski*, 556 U.S. at 407-09.

Accordingly, I conclude that the ALJ did not err at Step Two in the ways Plaintiff asserts.

## C.
## Plaintiff's Credibility

In scatter-shot fashion, Plaintiff contends that the ALJ erred in finding him not credible, specifically his alleged pain and symptoms. *See* Pl.'s Br. at 14 (in statement of facts section, arguing that Plaintiff's credibility was "not properly analyzed"), 30 (in section titled "The ALJ's Decision," stating that "Plaintiff argues that the ALJ failed to incorporate the Plaintiff's subjective symptoms as required under *Luna, supra*, and SSR 96.8p and SSR 85.15"), 37 (in section nominally pertaining to ALJ's alleged errors with respect to the DAA analysis, arguing that "[t]he analysis of [Plaintiff's] nonmedical objective and subjective testimony of pain under *Luna* was not sufficiently analyzed in the case at bar, therefore, this is grounds for remand"), 38, 40 (in section devoted to credibility, "aver[ring] that the ALJ did not perform a proper credibility analysis"). I again disagree.

14

In determining whether a claimant is disabled, an ALJ is to consider all of the claimant's symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). Other evidence includes statements or reports from the claimant. *Id.* Those alone, however, will not establish a disability. *Id.*; *accord* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *1. An ALJ must instead engage in a two-step process for evaluating a claimant's asserted symptoms, including pain. SSR 96-7p, 1996 WL 374186, *2. The ALJ firstly "must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* If there is, the ALJ secondly "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* In doing so, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

"Credibility determinations are peculiarly the province of the finder of fact, and [I] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988). To that end, the reasons for the finding "must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p,

1996 WL 374186, *4. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Id.* An "ALJ's credibility findings warrant particular deference." *White*, 287 F.3d at 910. This is because an ALJ "see[s] far more security cases than do appellate judges" and because "he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *Id.* For these reasons, courts will "generally treat credibility determinations made by an ALJ as binding upon review." *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

Turning to the instant case, "[a]fter careful consideration of the evidence," the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment." [AR 19]

**1**

From what I can discern, Plaintiff's first attack on the credibility finding is that "there is no evidence that the ALJ applied 20 C.F.R. 404.1529, 414.929 and Social Security Ruling 96-7p in arriving at the above conclusion that [he] was not credible." Pl.'s Br. at 38. Plaintiff further argues that the ALJ did not support his finding with specific reasons. A plain reading of the ALJ's decision unequivocally shows otherwise.

In the first instance, "20 C.F.R. 414. 929" does not exist. Plaintiff is presumably referring to 20 C.F.R. § 416.929. *See* SSR 96-7p, 1996 WL 374186, *1 ("The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 . . . ."). Proceeding as though he cited the correct regulation, Plaintiff ignores the ALJ's paragraph

immediately following his assessed RFC. It provides that "[i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, *based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p*." [AR 18 (emphasis added)] Tracking the language from SSR 96-7p, the ALJ then delineates the two-step process set forth *supra* for evaluating Plaintiff's alleged symptoms. [*Compare* AR 18-19, *with* SSR 96-7p, 1996 WL 374186, *2] This alone erodes Plaintiff's assertion that there is "no evidence" that the ALJ followed the prescribed regulations and analysis. Moreover, as will be shown *infra*, the ALJ then satisfactorily applied the two-step framework.

At the first step of the symptom evaluation analysis, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Hence, he proceeded to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited his ability to do basic work activities. SSR 96-7p, 1996 WL 374186, *1. This required a finding as to Plaintiff's credibility. The ALJ proffered a cornucopia of specific reasons tied to the record in support of his credibility finding. [*See* AR 14-21] Indeed, the ALJ's decision detailed so many reasons for this finding, and did so in such detail, that in the interest of brevity I summarize a select few in favor of fully quoting them.

Plaintiff's subjective complaints of various symptoms were vitiated by objective medical evidence, including examination notes from several treating sources. [AR 15, 20-21 (citing exhibits 5F-10F, 14F, 15F)]; *see* 20 C.F.R. § 404.1529(c)(4) (when evaluating the intensity and persistence of claimant's symptoms, and determining the extent to which those symptoms limit capacity for work, an ALJ must consider any conflicts between claimant's statements and the rest of the

evidence, including claimant's history, the signs and laboratory findings, and statements by claimant's treating or nontreating source or other persons about how the claimant's symptoms affect the claimant).

Plaintiff's statements to his medical providers contradicted his testimony to the ALJ that he had frequent "commanding" auditory hallucinations ordering him to hurt others. [AR 15, 52]; *see Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (in light of "a number of instances of misrepresentation," the ALJ reasonably found claimant not credible). Here, Plaintiff told his treating providers that the voices were "not really specific, more annoying than anything;" [AR 459] were possibly "negative self-talk;" [AR 465] and were "without command content." [AR 546]

Additionally, medical evidence does not support Plaintiff's statements regarding the frequency and severity of his seizures, and his own statements are inconsistent. [AR 20 (citing specific statements and evidence)]; *see Diaz*, 898 F.2d at 777 (upholding an ALJ's credibility determination where, among other factors, a claimant made inconsistent statements regarding the frequency of his seizures). The ALJ also explained that Plaintiff's "manipulative and drug-seeking behavior reflect[ed] negatively on his credibility, especially in view of his history of drug abuse and incarceration for drug fraud." [AR 15 (citing specific evidence)]

Plaintiff also testified as to certain debilitating symptoms and the need to nap for a couple hours twice a day. The ALJ found the former not credible because it was inconsistent with Plaintiff's own statements that, prior to his death, he independently cared for himself, did his own chores and shopping, and was able to get around using public transportation. [AR 19] The ALJ found the statements concerning the napping not credible because the record does not indicate that Plaintiff ever informed his physicians of his alleged napping requirements. [AR 19]

This is just a sample of the reasons contained in the ALJ's decision for his credibility finding. They, along with the others detailed in the ALJ's decision, are clearly specific enough to make clear to me the weight the ALJ gave to Plaintiff's statements and the reasons for that weight. And my review of the record and cited exhibits shows that these reasons are undergirded by evidence that a reasonable mind would accept in support thereof. This finding is thus not grounds for remand. *See* SSR 96-7p at *4; *see also Qualls*, 206 F.3d at 1372 ("[S]o long as the ALJ sets for the specific evidence he relied on in evaluating claimant's credibility, the dictates of *Kepler* are satisfied.").

## 2

Plaintiff also maintains that the ALJ erred in rendering his credibility determination because he failed to base it "on the entire record" Pl.'s Br. at 40. He asserts that the applicable regulations require that if there is not objective medical evidence in the record supporting a claimant's alleged symptoms, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* In an attempt to show that the ALJ did not do so, Plaintiff quotes the portion of the ALJ's decision stating that "[f]or this purpose, whatever statements about intensity, persistence, or function limiting effects of pain or other symptoms are not substantiated by objective medical evidence." *Id.* at 39-40.

But he omits the italicized portion of the ALJ's statement: "[f]or this purpose, whatever statements about intensity, persistence, or function limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.*" [AR 18-19] Thus, the ALJ's statement parrots the germane regulations and ruling. Plaintiff simply misrepresents the ALJ's decision. Moreover, the discussion above shows that the ALJ heeded this instruction. [*See*

*generally* 14-21, 21 ("Considering all of the above, *the record as a whole* does not support the alleged severity of the claimant's impairments to the extent he alleged . . . ."). The ALJ therefore did not err in the way Plaintiff claims.

**3**

Plaintiff's next claim of error is the general assertion that the ALJ's decision "selectively picks and misconstrues isolated bits of evidence to support a conclusion," that the ALJ "pick[ed] and cho[]se parts of medical opinions to fit his conclusions." Pl.'s Br. at 41, 42. Conveniently, Plaintiff does not point to any evidence that the ALJ misconstrues. He also fails to support or develop this argument. *See id*. Accordingly, I deem it waived. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) ("[P]erfunctory complaints fail to frame and develop and issue sufficient to invoke appellate review") (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (applying "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived")). Furthermore, as stated, I conclude that the ALJ cited and relied upon substantial evidence for his credibility determination.

**4**

It appears that another facet of Plaintiff's credibility determination argument relates to his pain. He asserts that the ALJ erred by not evaluating his alleged pain using the framework announced in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). [*See* Pl.'s Br. at 13-14, 37] It is opaque whether Plaintiff is arguing that the ALJ failed to analyze his alleged disabling pain or simply his alleged pain under *Luna*. In either case, Plaintiff is wrong.

I note that Plaintiff also fails to develop this argument. He does not cite any evidence of his alleged pain, nor explain how the ALJ erred in his evaluation thereof other than to cite *Luna* and

assert that the ALJ did not apply it. [*See* Pl.'s Br. at 13-14, 37] On this basis the argument could be deemed waived. *See Murrell*, 43 F.3d at 1390 n.2 (citing *Zannino*, 895 F.2d at 17). And even if it were not, it still fails.

*Luna* sets forth "the proper analysis of the evidence of allegedly *disabling pain.*" *See Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (emphasis added). By contrast, SSR 96-7p explains that 20 C.F.R §§ 404.1529 and 416.929 "describe a two step process for evaluating symptoms, *such as pain*, . . ." 1996 WL 374186, *1 (emphasis added).  Based on these, it seems as though the *Luna* framework applies only when the Plaintiff alleges disabling pain.

Plaintiff points to no evidence that he alleged disabling pain as a severe impairment prior to this appeal.  It is even unclear that he does so now. *See, e.g.*, Pl.'s Br. at 10 (asserting that "Plaintiff suffered from the following severe impairments: Schizophrenia, Seizure disorder, history of gastrointestinal bleeds, Hepatitis C, Asthma, and HIV. [*sic*] and Opiate Addiction," and not listing disabling pain), 13 ("[T]he above listings and Claimant's conditions produce disabling pain *or other limitations*.") (emphasis added). He therefore  waived this argument. *See Perez v. Astrue*, 2009 WL 3076259, *1 (D. Colo. Sept. 23, 2009) (unpublished) (in social security case, stating that "absent 'compelling reasons,' the Tenth Circuit will not consider arguments that were not presented to the district court. . .  This rule applies with equal force in [Social Security] proceedings, since this Court sits in an appellate review capacity when hearing social security appeals.) (citing *Berna v. Chater*, 101 F.3d 631, 633-34 (10th Cir. 1996); *Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994)).

Inasmuch as Plaintiff is arguing that the ALJ erroneously evaluated his allegations of pain–vi-vis-a-vis *disabling* pain–I find no error. Pain is considered a symptom under SSR 96-7p, see 1996 WL 374186, *1, and is to be analyzed thereunder, meaning it would fall within my prior

conclusion regarding the ALJ's credibility determination.

### 5

Another argument by Plaintiff that floats untethered is his alleged inability to pay for prescribed medications or treatment. In his decision, the ALJ found that "[m]ultiple examinations show that the claimant's seizure activity is controlled with medication compliance" and that "[m]edical records also document problems with [seizure] medication compliance." [AR 18, 20] Plaintiff's noncompliance was one of the things noted in, and apparently formed the basis of, the ALJ's credibility determination. [AR 20] Plaintiff alleges that he was unable to pay for his prescriptions and that this is a valid excuse for not taking them. Plaintiff, however, does not designate this as an "issue" on appeal, or even assert that the ALJ's credibility determination erred insofar as it depended upon Plaintiff's failure to take his prescription. The record does not indicate that Plaintiff raised this issue at his hearing with the ALJ, to anyone else in the Agency, or to his treating physician. On these bases, I conclude that the issue is waived. *See Adams-Arapahoe Joint Sch. Dist. v. Connecticut Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989)(issue not formally designated is waived; mere mention in context of another matter is not enough); *see also Perez*, 2009 WL 3076259, *1 (absent compelling reasons, district court will not consider arguments that were not presented to the ALJ).

### 6

A final wandering argument should be addressed. In his section addressing the ALJ's allegedly erroneous credibility evaluation, Plaintiff makes the stray and vague argument that "[t]here is also no information that [he] would be able to do any type of medium work 8 hours a day documented multiple health diagnoses and ongoing symptoms . he drove vehicle I [*sic*] past relevant

work, therefore this fact eliminate his ability to return to Step Four work." Pl.'s Br. at 4. Assuming the argument is what I think, I disagree.

With respect to the first portion–that there is "no information" that Plaintiff could perform medium work for eight hours per day–Plaintiff ignores significant evidence of record. For instance, Plaintiff's examining physician, Dr. Elsner, opined that Plaintiff could "perform any work a man his age and physique is able to perform." [AR 421-24] Furthermore, none of Plaintiff's other physicians opined that he has any physical limitations eliminating medium exertion-level work. The second component of the argument is equally untenable. The ALJ's RFC indeed includes a driving restriction, but the vocational expert who testified at the first hearing stated that Plaintiff could perform three of his previous five occupations *despite* that restriction because those job did not involve driving. [AR 66-67] For these reasons, I conclude that this argument is baseless.

**D.**
**Evaluation of Medical Opinions by Dr. Pelc and Dr. Leidal**

Plaintiff also vaguely asserts that the ALJ erred in weighing two medical source opinions: the psychological expert who testified at the second hearing, Dr. Robert Pelc, and Dr. Leidal. I conclude that the ALJ did not err in the ways Plaintiff claims.

**1**

To better assess Plaintiff's mental impairments, the ALJ took testimony from Dr. Pelc, a clinical psychologist. [AR 16, 69-94] After reviewing all of the medical evidence of record, Dr. Pelc opined that it supported mental impairments of an affective disorder, personality disorder NOS, and a substance abuse disorder, but that none of these "me[t] or equal[ed] listing level severity." [AR 16] Dr. Pelc indicated that evidence of a possible psychotic disorder or schizophrenia was inconsistent and contradictory. [AR 16] He further testified that Plaintiff had mild restrictions on

activities of daily living, moderate restrictions maintaining social function, moderate restrictions with respect to concentration, persistence, and pace, and no episodes of decompensation. [AR 16]

When discussing the medical evidence, Dr. Pelc testified that there are multiple inconsistencies in the record regarding Plaintiff's mental condition. [AR 16] He stated, for example, that certain psychological rating scales are consistently in the mild range and Plaintiff's GAF scores are highly variable without explanation. [AR 16 (citing AR 441-66, 497-518)] He also noted that the consultative exams characterized Plaintiff as having the capacity to engage in usual activities of daily living and that his symptoms were stable when he used his prescribed medications and was not on drugs. [AR 16 ] Dr. Pelc further testified that while Plaintiff complained of auditory hallucinations and paranoia, he also denied their presence. [AR 16 (citing AR 455-87, 497-515, 542-551)] Dr. Pelc opined that from a behavioral aspect, the evidence shows that the claimant did not demonstrate psychotic symptoms, especially when seen during a sustained period, such as when he was incarcerated or when receiving treatment from the Jefferson Center for Mental Health. [*See, e.g.*, AR 498 (treatment record from Jefferson Center for Mental Health stating that Plaintiff "was organized and appeared to process information remarkably well if he has auditory hallucinations").

The ALJ also asked Dr. Pelc to opine as to Plaintiff's ability to do certain work-related activities. [AR 16] Dr. Pelc testified that, in his opinion, based on a review of the medical records, Plaintiff retained the ability to understand, remember, and carry out both simple and more detailed, complex instructions. [AR 16] He stated that while there may be some interferences from mild distractions, Plaintiff would have no more than a slight limitation in this area, such that he would still be able to do those things satisfactorily. [AR 16-17] Dr. Pelc further testified that Plaintiff had the ability to interact appropriately with co-workers, supervisors, and the public, as well as respond

appropriately to usual work situations and to changes in a routine work setting.  [AR 17]

> After explaining the above in his decision, the ALJ stated the following:
>
> Dr. Pelc's testimony appears to be consistent with the findings made in this decision and does not suggest that the claimant has "severe" mental impairments or any significant limitations. The undersigned finds Dr. Pelc's testimony and opinions persuasive and accord them great weight as they are based upon his review of the record and his knowledge and training as a clinical psychologist. Furthermore, as an expert witness before the Social Security Administration, he has knowledge of our disability program and has had the opportunity to review the entire medical evidence of record when he offered his opinion.

[AR 17]

Plaintiff's most identifiable argument with respect to the ALJ's assessment of Dr. Pelc's opinion is that the ALJ could not accord it "great weight" in part because of Dr. Pelc's knowledge and training as a clinical psychologist or his knowledge of the Social Security Administration's disability program. Pl.'s Br. at 32. Because he did, Plaintiff asserts an error. *Id.*

Plaintiff is wrong.  He fails to provide any authority in support of this proposition.   That is probably because the pertinent regulations explicitly provide otherwise.   *See* 20 C.F.R. § 404.1527(c)(6) ("When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion."). This argument thus merits its no further consideration.

Plaintiff also claims that the ALJ misstated Dr. Pelc's conclusions regarding Plaintiff's social functioning. Pl.'s Br. at 31. He explains that while the ALJ stated that "Dr. Pelc's testimony appears

to be consistent with the findings made in this decision and does not suggest that claimant has

'severe' mental impairments or any significant limitations," [AR 17] Dr. Pelc also testified that

> [b]ased on the preponderance of all of the information in the complaints that were made throughout intermittently, although inconsistently, is this report I've also placed [Plaintiff] at a higher level of restriction regarding his social functioning that [*sic*] Dr. Lidell [*sic*] did. . . . Dr. Lidell [*sic*] places him at a mild level of restriction. I believe there is more than a slight limitation in his social functioning.

*Id.*; [AR 91-92] Plaintiff contends that this alleged misstatement is grounds for remand.

Plaintiff fails to show a "misstatement." Dr. Pelc opined that Plaintiff had moderate restrictions with respect to his social functioning. As both Dr. Pelc explained in his testimony and the ALJ explained in the decision, "moderate" in this context means "[t]here is more than slight limitation . . . but the individual is still able to function satisfactorily." [AR 16-17, 79]  Thus, the ALJ did not misstate Dr. Pelc's conclusions because, by definition, the "moderate" social functioning restrictions Dr. Pelc found were not "severe."

**2**

Plaintiff further claims that the ALJ "did not discuss or assign weight" to Dr. Leidal's assessment that Plaintiff's mental ability to appropriately relate to others, his ability to accept instruction or criticism and respond to instruction in a work setting, and his adaptability are moderately impaired, and his ability to work near others and not be overly distracted and remain focused is moderately to markedly impaired. Pl.'s Br. at 31-32.

This argument is unavailing. For one, Plaintiff does not actually assert this as an error for review.  Curiously, the argument is ensconced under the heading, "C. The ALJ erred in basing his weight for the testimony of [Dr. Pelc] Post Mortem analysis based upon his credentials."  *See* Pl.'s Br. at 31. It is thus waived. *See Adams-Arapahoe*, 891 F.2d at 776 (issue not formally designated

is waived; mere mention in context of another matter is not enough).  And for another, Plaintiff does

not develop the argument; he merely states that "[t]he ALJ did not discuss or assign weight to Dr.

Leidial's [*sic*] assessment that: . . ." and quotes the assessment–nothing more. *See* Pl.'s Br. at 31-31.

This too, operates as a waiver.  *See Murrell*, 43 F.3d at 1390 n.2 (citing *Zannino*, 895 F.2d at 17).

The argument is also meritless. In his decision, the ALJ explained the following:

> In a July 2009 psychological evaluation by Frederick Leidal, Psy.D., the claimant's
> mental status was unremarkable (Exhibit 15F). He demonstrated normal appearance
> and behavior, normal thought content and organization, normal affect and mood, and
> normal cognitive functioning. Dr. Leidal provided an assessment of the claimant's
> mental work-related limitations, which is consistent with a finding that the claimant's
> psychological impairments are not severe (Exhibit 15, pages 5-9). In part, Dr. Leidal
> concluded that the claimant would have none to mild limitations in the ability to
> interact appropriately with the public, co-workers and supervisors; and mild to
> moderate limitation in the ability to respond appropriately to usual work situations
> and to changes in a routine work setting. The term "moderate" is defined in this
> assessment as more than a slight limitation in an area, but the claimant is still able
> to function satisfactorily. This supports a finding that the claimant's mental
> impairments would not significantly affect his ability to work.
>
> Although Dr. Leidal also indicated in his narrative report that the claimant might
> have some moderate to market impairment in various other realms of mental
> functioning, the undersigned finds these opinions not fully persuasive and accords
> them little weight, as they are substantially inconsistent with the exam findings and
> testing. Furthermore, these opinions are inconsistent with the qualified medical
> expert testimony at the hearing and are not supported by any other medical evidence
> of record.

[AR 15-16] The passage above clearly shows that the ALJ discussed and weighed the opinion at

issue. Plaintiff also appears to claim, however, that the ALJ erred by according the certain pieces

of the opinion "little weight." I find no such error.

In determining whether a claimant is disabled, an ALJ must consider and evaluate the

medical opinions in the claimant's case record together with the rest of the relevant evidence he

receives. 20 C.F.R. § 404.1527(b), (c). Unless the opinion is from a treating source and is given

controlling weight, an ALJ considers the following factors in deciding what weight to give an opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. *Id.* § 404.1527(c), (e)(ii). Under the governing regulations, Dr. Leidal is considered a non-treating source. [*See* AR 542]; 20 C.F.R. § 404.1502. The parties do not argue otherwise. As he must do with other medical sources, the ALJ is required to explain in the decision the weight given to a non-treating source's opinion. 20 C.F.R. § 404.1527(e)(ii). But because Dr. Leidal is a non-treating source, the ALJ is not required to give his opinions controlling weight or to give specific reasons for not doing so. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *c.f.*, 20 C.F.R. 404.1527(c)(2) ("We will always give *good reasons* in our notice of determination or decision for the weight we give *your treating source's opinion*.") (emphases added).

The Tenth Circuit has previously determined that "an ALJ's rejection of a non-treating physician's opinion adequately demonstrated his consideration of the opinion's consistency with other evidence in the record." *See Lauxman v. Astrue*, 321 Fed. App'x 766, 769 (10th Cir. Apr. 15, 2009) (unpublished) (citing *Doyal*, 331 F.3d at 764). Here, the ALJ indubitably considered and explained the "little weight" accorded to this portion of Dr. Leidal's opinion. [*See* AR 16] He explicated that the portion of Dr. Leidal's opinion concluding that Plaintiff might have some moderate to market impairment in various other realms of mental functioning was substantially inconsistent with the exam findings and testing, much of which the ALJ discussed in his decision. [*See* AR 15] The ALJ also stated that this opinion is inconsistent with Dr. Pelc's testimony, which specifically identified the inconsistencies. [AR 16] Additionally, the ALJ explained that the opinion is not supported by any other medical evidence of record. Plaintiff does not dispute any of these explanations other than to say the ALJ failed to assign more weight to the opinion. My review also

28

reveals that the ALJ's evaluation is supported by substantial evidence, much of which the ALJ detailed in his decision. [*See* AR 15-17] I therefore conclude that the ALJ did not error by according this specific opinion by Dr. Leidal "little weight." *See, e.g.*, *Lauxman*, 321 Fed. App'x at 769.

Accordingly, I conclude that the ALJ did not err with respect to his treatment and assessment of Dr. Pelc and Dr. Leidal's opinions in the ways Plaintiff claims.

### E.
### ALJ's Reliance on Vocational Expert

Plaintiff also appears to submit that the ALJ erred in certain respects pertaining to the vocational expert who testified at the first hearing, Mr. James Hardway. As explained, there were two hearings. Mr. Hardway testified only at the first. Another vocational expert was prepared to testify at the second hearing, but she was not called to do so. Plaintiff's claims of error are meritless.

As an initial matter, Plaintiff again fails to formally designate the alleged issues and instead merely mentions them other contexts. *See* Pl.'s Br. at 24, 36. As a corollary, he waived them. *See Adams-Arapahoe*, 891 F.2d at 776 (issue not formally designated is waived; mere mention in context of another matter is not enough).

That notwithstanding, they still fail. Plaintiff first argues that the ALJ "misstated" that he relied on the testimony of the "second [vocational expert] when she did not testify," and that this error requires remand. Pl.'s Br. at 36. This misstates the ALJ's decision. At the first hearing, Mr. Hardway testified concerning the Plaintiff's past relevant work and his ability to do that work. [AR 365, 65-68] To do so, he reviewed Plaintiff's file and submitted a written work history to the ALJ. [AR 65, 365] Mr. Hardway testified that Plaintiff had past relevant work experience as an auto rental clerk, advertising sales representative, chauffeur, telemarketer, and auto detailer. [AR 22, 65-68, 365] The ALJ asked Mr. Hardway whether someone with the RFC that the ALJ determined Plaintiff

to have could perform those jobs. [AR 66-67] Mr. Hardway answered no for chauffeur and auto

detailer, but yes for telemarketer, auto rental clerk, and advertising sales representative. [AR 66-67]

In his decision, ALJ's stated the following:

> At the prior hearing, the vocational expert testified the claimant has past relevant work as identified in the Dictionary of Occupational Titled (DOT) as an auto rental clerk (DOT #295.467-026, SVP 4, light): advertising sales representative (DOT #254.357-014, SVP 6, light); chauffeur (DOT #913.663-018, SVP 3, light); telemarketer (DOT #299.457-014, SVP 3, sedentary); and auto detailer (DOT #915.687-034, SVP 2, medium) (See Exhibit 10E and hearing testimony).

> Social Security Ruling 82-61 provides than an individual will be found "not disabled" when it is determined that he or she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupations as generally required by employers throughout the national economy.

> The impartial vocational expert testified that based upon the claimant's residual functional capacity as described above, the claimant would be able to perform his past relevant work as an auto rental clerk, sales representative, and telemarketer as customarily performed and as actually performed by the claimant. The undersigned finds that the claimant performed these occupations at substantial gainful activity levels in the past 15 years.

> The undersigned finds that the vocational expert's testimony is supported by the record as a whole and finds the claimant's impairments do not preclude him from performing his past relevant work as an auto rental clerk, sales representative, and telemarketer as those jobs are customarily performed in the national economy and as actually performed by the claimant. The exertional and non-exertional requirements of these jobs are consistent with the claimant's residual functional capacity as determined in this decision. Therefore, the claimant has not satisfied the burden to establish that his impairments prevent him from performing "past relevant work," and that he was disabled as defined in the Social Security Act.

[AR 22] Nowhere does the ALJ state that he relied on a vocational expert that did not testify; rather,

it is clear that the ALJ refers to and relies on Mr. Hardway's testimony.

Plaintiff also maintains that the ALJ erred by not including Mr. Hardway's answer to a

second hypothetical in the assessed RFC and decision. As explained, the ALJ first asked Mr.

Hardway whether someone with the assessed RFC could perform Plaintiff's past jobs. [AR 66-67] The ALJ then asked whether any of those jobs or any others accommodate two-hour naps twice a day; Mr. Hardway said no. [AR 67] This second hypothetical question and answer were not included in the ALJ's decision. Plaintiff asserts that "this omission, without explanation [is] grounds for a Remand." [AR 24] He is wrong.

The ALJ asking an alternate hypothetical question did not bind him to include the additional limitation contained in that question–here, the napping–in his ultimate RFC assessment or his decision. *See, e.g.*, *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."); *Qualls*, 206 F.3d at 1372 (ALJ not required to include in his RFC assessment limitations which he found unsupported by the record). The ALJ not only assessed Plaintiff's credibility generally, he also specifically discussed the credibility of Plaintiff's purported napping requirements and provided specific reasons supported by substantial evidence for not incorporating it into the assessed RFC, including that the record does not indicate that the Plaintiff ever informed his physicians of the need to take two-hour naps twice a day. [AR 19] Thus, the fact that he omitted this question and answer from his decision and excluded this limitation from the RFC is not erroneous. Moreover, Plaintiff again fails to provide legal support for this argument. Plaintiff's argument also defies the five-step sequential evaluation. Mr. Hardway did not opine as to Plaintiff's medical condition, impairments, or RFC. This is because an ALJ makes these findings *before* Step Four; by contrast, vocational expert opinions are often solicited in Steps Four and Five. This is why the questions the ALJ asked Mr. Hardway presupposed a particular RFC. To argue, then, that Mr. Hardway's answers should shape the previously formulated

RFC is to put the cart before the horse.

Accordingly, I conclude that the ALJ did not err with respect to the vocational expert in the ways Plaintiff claims.

## VII. CONCLUSION

For the foregoing reasons, I AFFIRM the SSA Commissioner's final order.

Dated: January   4  , 2013, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE